THE UNDERWRITERS' AGENCY, plaintiff in error, *vs.* EDWARD SEABROOK, administrator, defendant in error.

Where a bill was filed against an insurance company to make them liable for certain cotton lost by the sinking of a steamboat, on the ground that their agent had fraudulently misled the owners, so as to induce them to believe that the cotton was insured by the company; and the evidence showed that the agent, for whose act the company was sought to be charged, was the agent of several other insurance companies engaged in the same business at the same place, and there was nothing in the proof to show for which of the companies the agent was acting at the time he did the acts from which the fraud was sought to be inferred:

*Held*, That a verdict against the company was illegal, and without evidence to support it, and it was error in the Court to refuse a new trial.

Insurance. Principal and agent. Before Judge JAMES JOHNSON. Muscogee Superior Court. October Term, 1872.

In February, 1866, Lloyd G. Bowers, in behalf of Edward Seabrook, administrator upon the estate of George O. Dawson, deceased, applied to DeWitt F. Wilcox, in Columbus, Georgia, the agent of the Underwriters' Agency, for insurance on one hundred and ten bales of cotton, which risk, in behalf of the Underwriters' Agency, Wilcox refused to take.

Bowers then wrote a letter to Y. G. Rust, as follows:

"COLUMBUS, February 6, 1866.

"Y. G. RUST, Esq.—Dear Sir: Will you please find Mr. Oliver Cromwell and get particulars of him how he ships two lots of cotton to Apalachicola, (one of fifty bales, the other of sixty bales,) and insure them to Apalachicola. Send bills to me and I will remit by express. Mr. W. Cromwell expected me to insure, but found out, after his son had left, I could not. Your prompt attention will oblige

"Yours,     L. G. BOWERS.

"How is your cotton market? Market dull here. Middlings, thirty-eight cents. Is there much in your section?"

To which Rust responded as follows:

"ALBANY, February 9, 1866.

"L. G. BOWERS, Esq., Columbus—Dear Sir: Your favor of the 6th instant is received. Mr. Cromwell is now shipping sixty bales of cotton by steamer 'White Rose,' now loading at this place. The other fifty bales he will not be able to get off in time for the boat, but will ship next week. The treasury agents have seized one bale of his cotton, the producer being a subscriber to the cotton loan. Middling cotton worth, to-day, thirty-five cents.     Yours truly,

"Y. G. RUST."

The steamer White Rose sunk on the 19th February. Oliver Cromwell, on the 21st February, called on Y. G. Rust

" to make arrangements about collecting the insurance or to take initiatory steps thereto." Rust remarked, " why your cotton is not insured," etc. Bowers and Rust were insurance agents, Bowers in Columbus and Rust in Albany, of the Ætna and Home. Wilcox in Columbus, and Rust in Albany, represented the Underwriters' Agency. After this Seabrook, administrator as aforesaid, through his agents, took charge of the cotton, shipped it to Apalachicola, sold part as damaged, shipped part to Liverpool, received proceeds of sale on 5th April, 1866, and on the 13th April, 1866, filed a bill *versus* Y. G. Rust and the Underwriters' Agency, charging the latter with constructive fraud in inducing him, Seabrook, to believe his cotton was insured in that company, in consequence of which he failed to take out other insurance. The charges in his bill are :

1st. That he applied through his agent, Warham Cromwell of Columbus, to Lloyd G. Bowers of the same city, to insure said (one hundred and ten bales) cotton ; that Bowers replied he could not take the risk himself as the cotton was not in his district, but that he would get it taken by Yewell G. Rust, of Albany, *the agent of the Underwriters' Agency;* that Bowers wrote the letter before set out to Rust and received the reply hereinbefore set forth, which Bowers considered as an insurance of the cotton, and so informed complainant, who rested satisfied that his cotton was insured.

2d. That he, Rust, afterwards acted on this letter in respect to the lot of fifty bales, which he not only did insure as agent of Underwriters' Agency, but made out all of his charges, *including the premium of insurance against Bowers.*

3d. That complainant, for these reasons, reposed full confidence in Rust, as agent of the Underwriters' Agency, that he would insure said cotton, and that his omission or neglect to do so was contrary to the legal and equitable duty of said company, and caused to complainant the loss of his cotton.

In addition to the letters at the trial, complainant introduced L. G. Bowers, who testified, that he did not write the letter to Rust as agent of the Underwriters' Agency; that he

did not have said office, or any other, in his mind; that he merely wrote to Rust because he knew that he was the agent of several companies; supposed that Oliver Cromwell would attend to getting certificates of insurance; that he should have called on Rust for that purpose.

Warham Cromwell, agent of complainant, testified: Bowers said he could not insure the cotton in Albany, as Rust represented at that point the companies represented in Columbus by him, Bowers; that he would see Wilcox, the agent of the Underwriters', and endeavor to get insurance; if he failed, that he would write to Rust and instruct him to insure; that he did apply to Wilcox, agent of Underwriters, who declined the risk, and he had written to Rust, by mail and express, instructing him to insure the cotton; witness saw the letter written by Rust to Bowers, and was fully and entirely satisfied the cotton was insured and so informed complainant.

Oliver Cromwell testified, that all that occurred between him and Rust in regard to the sixty bales was that Rust showed him Bowers' letter, and he told Rust how he was shipping; did not request insurance in any particular company.

Y. G. Rust testified, that he did not represent any insurance company when he had read the letter to Cromwell, or when he wrote the reply; that he was agent, at the time, for the Ætna, the Home and the Underwriters' Agency, and as Cromwell neither advised him of the marks, values or completement of the shipment, he did not even know what cottons were shipped on the "White Rose," or that he was looked to for insurance until after the wreck.

Both Rust and Cromwell testified that the fifty bales were insured on a special and separate application by Oliver Cromwell for insurance in the Underwriters' Agency; that the premium, $217 00, was paid in cash at the time, and certificates of insurance delivered.

The Underwriters' Agency introduced no evidence.

Before charging the jury, the Court inquired of complainant's counsel if he sought to have a decree against defendant,

Rust. He replied that he did not. This occurred in presence of the jury. The Court then charged:

1st. That in this proceeding no decree could be rendered against Rust.

2d. That if the defendant, by its agent, induced the plaintiff or his agent to believe that his cotton had been insured, when, in fact, it had not, and if so believing, the plaintiff had not insured, and the cotton was lost, as alleged by plaintiff, said defendant became liable to plaintiff, and the measure of the liability was the value of the cotton believed to be insured at the time the same was lost, with interest thereon to the time of the trial.

To which charge defendant excepted.

The Court, at the request of defendant, charged the jury:

"If Rust was agent of other companies as well as defendant's, and the proof does not show that Rust was dealing with complainant as agent of defendant, complainant cannot select out of the several companies represented by Rust the Underwriters' Agency, and so fix the liability on it, rather than some other company which Rust represented."

Upon these charges and evidence a verdict was rendered against the Underwriters' Agency for $13,015 00.

Defendant moved for a new trial, because the Court erred in its charge, because the verdict was contrary to the law, as given in charge, and without evidence to support it. A new trial was refused, and defendant excepted.

R. J. MOSES, for plaintiff in error.

HENRY L. BENNING, for defendant.

McCAY, Judge.

It must be remembered that the complainant's case in this bill cannot stand upon any *contract* to insure. Contracts of insurance must be in writing: Code of 1873, section 2794. To justify a verdict for the complainant, it must appear that by the conduct of the company's agent it has been put in such a

situation as that it is liable for damages for his act, or for his failure to act. It is not sufficient that the agent, as an individual, has done something for which he would be liable; the act proven must be some act of the agent representing the company. If, for instance, the evidence shows that Bowers wrote to Rust, as a *friend*, asking him to see Cromwell, get the marks and the mode of shipment of the cotton, cause it to be insured and draw on him for the premium, and if Rust undertook to do so and failed, and so misled the complainant as to prevent him insuring, in fact, then, however, Rust might be chargeable, the company would not be. The basis of the right to recover is, that the acts which misled, if there were such acts, must be Rust's acts as the *agent of the Underwriters' Company*. As the case went to the jury—there being a disclaimer of any verdict against Rust—to justify the verdict it must have been shown that Rust did certain acts *as the agent* of the defendant; that those acts were of a nature calculated to lead them to believe the sixty bales of cotton were insured by Rust, as the *agent of the defendant*, and that they did so believe, and failed to insure in fact.

We do not think there is *any* evidence in the record to justify the verdict, to make out these necessary ingredients of a case for the plaintiff. It appears that Rust was the agent, taking river insurance for *three* companies, and that he was also a warehouseman, having cotton in store for this very plaintiff. Two of these companies were represented at Albany by Rust, and at Columbus by Bowers. The Underwriters' was represented at Columbus not by Bowers but by Wilcox. The plaintiff applies to Bowers (not the agent of defendant.) Bowers declined, because, to take the insurance would be to interfere with the Albany agency of those companies which he represented at Columbus, and Rust, at Albany. As the plaintiff was an old customer and friend, he, however, made himself busy to get the cotton insured. He applied to Wilcox, the defendant's agent at Columbus. Wilcox declined. He had told the plaintiff that if he failed with Wilcox he would *instruct* Rust to insure; and he wrote to

Rust the letter of the 6th of February. Naturally one would suppose, as this was a letter from one agent of these companies to another agent of the same companies, that if Bowers was writing to Rust as an insurance agent at all it was as agent of his own companies. But he does not, in terms, address Rust as an insurance agent at all, nor does he write as an agent. His letter is to Rust as an individual, and he signs it as an individual, and he testifies that he did *not have any particular company* in his mind when he wrote ; and, doubtless, that was the fact. He intended to ask Rust to insure in any company he might see fit, and Rust would have fully complied with his request as well as with the intimation contained in his reply to that request, if he had insured in *any* of the companies he represented, or in any other good company represented by some other person at Albany. Nor is there in Rust's reply anything to show that he was acting as agent of the defendant. He writes as an individual. He signs his name Y. G. Rust, with no affix of agent for anybody. It is giving, too, a very large effect to Rust's letter to infer from it that he promises to insure at all. He acknowledges the receipt of Bowers' letter, and says that Mr. Cromwell is shipping sixty bales by the steamboat, and will ship the balance in a short time, but he does not say he will insure as Bowers had requested. It is very probable that Bowers did think from this that Rust would do as he requested him. But this thought is not founded on any promise in the letter, but is only an inference founded in the relations between him and Rust as friends, knowing each other and having confidence in each other. Certainly there is nothing in the letter of Rust to justify an inference that Rust would insure as agent of the *Underwriters' Agency.* So much for the letters of Bowers and of Rust. Rust showed Cromwell Bowers' letter, and Cromwell gave to Rust the marks of the cotton, sixty bales, and informed him that they were on board the steamboat.

We think it very probable that Cromwell supposed Rust would insure them from this act, though it would be going

very far to hold Rust bound, even as an individual, for damages for not insuring. He was under no *obligation* to do it. His undertaking, if he did undertake, was gratuitous, and if he is liable at all, it is only because Cromwell, trusting to this, took no further steps. Can any one think, if Cromwell had been instructed by his father to insure, (he says he was not,) that he would have been satisfied as the matter stood.

But there was nothing said by Rust to Cromwell, nor by Cromwell to him, to indicate that Rust, in showing Bowers' letter and in getting the marks of the cotton, was acting as the agent of the Underwriters' Agency. Cromwell says distinctly that nothing of the kind occurred. It is true that in one of his answers he does say that no other company was mentioned but the Underwriters' Agency. But it is plain that, in this, he is referring to the fifty bales insured in that company, in March, since he says several times that at the interview in February, when Rust showed him Bowers' letter, and he gave the marks of the cotton, nothing was said as to what company it was to be insured in. Is not the presumption just as strong that it was to be insured in the Home or Ætna as in the Underwriters'? Nay, is not the inference just as strong that, in getting these marks, Rust was not acting as the agent of any of the insurance companies, but as a warehouseman, and as the agent of the plaintiff?

We do not think the fact that the fifty bales was, after the first lot was lost, (after Rust had refused to recognize it as insured, and repudiated the inference they sought to draw from his letter of the 6th of February, and his conversation on that day with Cromwell, taking the marks, etc.,) has any thing to do with this suit. It seems to us absurd to say that because Rust, in March, on the special application of Cromwell, to insure the fifty bales in the Underwriters', did so in-sure it, receiving from him the premium in cash, is to be held as acting as the Underwriters' Agency, in his letter of the 6th of February, and in his acts of that date, as testified to by Cromwell. Had he, on the application of Cromwell, insured this fifty bales in the Home or Ætna, would that have shown he

was, on the 6th of February, acting for the Home or Ætna? The only use that can be made of this insurance in March is, to show that Rust, in agreeing to look to Bowers for his storage, did so in view of Bowers' first letter. But this does not throw *any light* on the question as to whether Rust was acting for the Underwriters' when he spoke to Cromwell on the 6th of February, and when he wrote the letter of that date to Bowers. If it indicates anything it is that Rust was acting as a warehouseman, because, in insuring the fifty bales, he gets and credits the *cash* for the insurance, and charges Bowers with the *storage.*

It is undoubtedly true that Mr. Rust's conduct and his testimony does not, in view of what the other witnesses say, appear to be quite free from blame. We are not prepared to say that the evidence, taken altogether, does not show that when he spoke to Cromwell, and when he wrote the letter of the 6th, he did intend to insure both lots of cotton; but we are very clear that the evidence does not show that, *as agent of the defendant,* he undertook to do so. Had he insured both lots in the Home or Ætna, or had he gone to some other insurance agent and insured them in some company he did not have anything to do with, he would have done everything Bowers requested him to do, everything Cromwell thought he was about to do, and everything Bowers supposed, from his letter of the 6th, he had done. Under such a state of facts, it seems to us that it is entirely gratuitous to charge the Underwriters' with the *damages* flowing from Rust's failure to comply with Bowers' request.

Had Bowers written to Rust as agent of the Underwriters', and Rust showed Cromwell such a letter—had Rust replied as such agent—had Rust been the representative of no other company doing that kind of business—the verdict might have been sustainable, though, even then, it would have been an extreme case.

If, when the law requires a contract to be in writing—men trust to mere words—it ought to be a strong case to make a

principal liable for the act of his agent in promising, by parol, to do that which, when done, must be done by writing.

Judgment reversed.